The first case to be argued is number 20-1300, Fishman v. Office of Court Administration. Mr. Demiriak, you may proceed. Thank you, Your Honor. May it please the Court. Good morning, distinguished judges and opposing counsel. My name is Keener Demiriak, and I represent Plaintiff Appellant Mark Fishman. In this case, the state court refused to provide simple and basic auxiliary aids and accommodations to Mr. Fishman, despite his hearing and cognitive disabilities, including a traumatic brain injury, thereby denying him meaningful access to the court proceedings and discriminating against him. This resulted in a disabled father being subject to unjust child custody, visitation, and support orders. He could not meaningfully participate in proceedings, and this caused him severe harms. The district court's decision below to grant the defendant's motion to dismiss, abstaining from jurisdiction, was erroneous and against settled precedent on the jurisdictional and abstention doctrines, including recent cases from this circuit since full briefing. The district court did not even address the plaintiff's claims under Section 504 of the Rehabilitation Act. The plaintiff pled that he was a disabled person he was discriminated against and that the defendants received federal funding. Before dismissal, the plaintiff at least was entitled to discovery on the jurisdictional issue, but that might not even be necessary after this court's April 2021 decision. In April 2021, this circuit held that the courts of original jurisdiction, the trial courts of the state of New York, including the family court, have waived any immunity under Section 504 by receiving federal funding. This is the finding in TW versus New York State Court of Law Examiners, and the site is 996F3rd87. This failure alone requires reversal, and under the New York State Constitution Article VI, Section 7B, the family court is a court that the legislature has created, which is able to have origination of the family court proceedings. Let me ask you a question that goes to the basics. The notice of appeal here was filed with the Second Circuit rather than the district court, but that's OK. And it was done by email, but was it timely? I would say it was timely, Your Honor. I think under the circumstances of the COVID and the way in which it was handled, I think in this circumstance, the notice of appeal was exactly timely. Obviously, on paper, the date itself was not timely. Well, what nearly dates appear on paper. So it looks like it's a day late. Should it be construed as an application to file late? I think it should be construed as an application to file late. I think the plaintiff in our briefing, we've explained the difficulties he had in filing a notice of appeal due to the closure of the court, but because this was the White Plains Southern District Court, he had to file the notice of appeal with that district court, but it was closed. There was no physical way for him to have filed it. So under those circumstances, I think this court should exercise its discretion to view the late notice of appeal as an application to file notice of appeal late and grant it non-protoct. You referred a moment ago to federal funding. Yes. What does that argument consist of in Mr. Fishman's papers? It looks like it's one sentence in a very long document with nothing behind it. I mean, there's no statement as to what funding, how much, from where, from whom. Yes, and I will agree that in the complaint, there is one sentence stating that the defendants do receive federal funding. This complaint needs to be viewed liberally and construed in every favor to the pro se. This was a pro se complaint filed before I was on it. I think that the allegation itself, combined with the case law now, I think supports it. But I think in and of itself, I think the complaint, just by stating the federal funding receipt, does state plausible facts for the federal funding. And the most important part here is that it's a pro se. So I think that that would be sufficient under these circumstances. While we're talking about pleading, let me ask a different question, because the pleading alleges that the judge is the sole person in court responsible for administering the accommodations required by the ADA. And if that's the case, then why is there a claim against the OCA? Sure. The claim against the OCA is because the state itself has separated out how the accommodations are handled. The accommodations here were handled by the judge and the court attorney primarily, although they are defined as administrative. On the United Court System website, it defines accommodations as administrative, which are auxiliary aids such as note takers, large print court orders, and CART. What happened here is the judge and her court attorney determined these while OCA should have actually determined them. But later on, OCA took it upon themselves. I mean, the pleading, you seem to be sort of saying that public documents or public websites should be credited over the statements alleged in the pleading. Should we be doing that? Well, not necessarily. I think in these circumstances, those public documents were inherently relied upon in drafting the complaint. And when that's done on a motion to dismiss, the court can review such documents and make a determination. And it wouldn't be beyond the pleadings. And being that this is a pro se who is basing a lot of his claims on the website. If you look through the complaint, he's referring to the grievance procedure and other public notices given by the court system on its website. And I think that section also would be incorporated and completely inherent in the allegations made there. And obviously, again, this is mostly a complaint, so it must be read liberally. But I think taking into account how the allegations are made and the public information available on the court system website, I think it's clear that the reason why OCA is also involved is because the accommodations itself were administrative. And OCA could have overruled the judge's decision on this. No, the judge didn't have the ability or authority to even make those decisions. They had to be given to OCA to make it because it's administrative in nature. And then you're really asking us to disregard the statement in paragraph 156 that the judge is the sole person responsible for administering the accommodations. Sure. I think the plaintiff there inartfully pled that allegation. So I am asking in some respect for this court to look at it more broadly, more liberally, not necessarily reject it. But I think that itself is inartfully pled. If I had written it, it would say, you know, the judge and the OCA have the authority to make these determinations. But the you know, the judge did it improperly. And I think if you read the complaint in its entirety, I think you can you can derive those. Could you could you tell me what tell us what proceedings are ongoing now in the state court? It was difficult for me to be clear. It looks like there might be an appeal pending and a motion pending post post judgment in one of the many proceedings. Yeah, the appeal that was noted in the in the documents under the Second Circuit is no longer pending.  The only ongoing proceeding at this point is a criminal case against Mr. Fishman, where sentencing is going to happen for an order of protection violation. And there's currently litigating over if court should be provided, the accommodation should be provided and when sentencing can occur. To my knowledge, that's the only thing that's ongoing. Is that covered then by the relief you're asking for here? No. No, the case itself only involves the family court proceedings. It doesn't it didn't go it didn't involve the criminal case. That was that was after the fact. And so and is Ms. D'Ambrosio involved in the criminal proceeding or in any ongoing proceeding with Mr. Fishman? No. So is there any basis for a claim for injunctive relief against her? Against her specifically at this point, the proceedings against her has ended have ended. So there would be no perspective in relief. She's no longer involved in this. But as far as the claim for monetary damages, you know, for denying him access to the accommodations and forcing him to pay for them, that claim would still be open. But but the main the main issue with the district court's decision is how it applied Title two and how wrong it was. I'd like to ask you about that in a minute, but I have another question for us, which is it from the when I was able to glean from the public record and from the complaint, Mr. Fishman suffered these two car accidents in 2013 in June and November. And then the family proceedings continued. They had started in 2012. And then between June 2015 and September 2016, Mr. Fishman made about 14 appearances in the family court and participated fully, apparently without accommodations. Is that is that correct? I think at that point, the accommodations either were not requested or his doctors had not yet said he needed them at that point. But on this issue, the this circuit in June had determined that even a minor or temporary disability of less than six months is actionable. So even if, you know, throughout the whole proceedings, he's not being accommodated or not claiming a disability, when a disability arises that necessitates the accommodation, it needs to be accommodated. Of course, only reasonable accommodations are required and the reasonable accommodations have to be designed to allow someone to fully participate. And I was struck by the fact that he appeared to have been able to fully participate on many occasions before he requested accommodations and yet presumably already suffering from the same conditions, including tinnitus and so on. Is that a misapprehension of the record? Yes and no. I mean, the disability does get worse over time. And here the defendant didn't even acknowledge that he has a disability. Maybe you could take a minute then. I know you're out of time, but I'd like you to just address in the first instance, because I didn't see it in your reply brief. In reply to the OKA defendant submission that you that Mr. Fishman failed to state a claim for which relief could be granted. You know, there's a debate about whether he's actually a qualified individual and so on. But then you have to show or plead plausibly that he was excluded from participation effectively and the exclusion was due to his disability. And I was having difficulty understanding how the pleadings met that standard. Maybe you could address that before you sit down. Thank you, Your Honor. Briefly, the complaint definitely pleads a plausible claim upon which relief can be granted for disability discrimination under Title II of the ADA and the Rehabilitation Act of Section 504. In the complaint, the plaintiff makes clear that he is a disabled person. He meets the requirements under the ADA Amendment Act of 2008 for what a disability is. He adequately sets forth that the court system is subject to Title II pursuant to Tennessee v. Lane and the equal protection violations. He also sets forth that the federal funding is received. I understand that. I'm really interested in the last two steps. How was he excluded from participation? Some accommodations were made. He showed up. He had a note taker of his own. He didn't have everything he requested, but he had some accommodations from the court. And I couldn't see any indication in the record or from the complaint that he could not actually participate. Yes. So the standard is not whether he could fully participate or not. The standard is whether or not without the accommodations, he can't meaningfully participate. And I think even if he is there, even if he has this note taker that he's providing at his own cost, he's not able to meaningfully participate. He's been denied meaningful access to the proceedings without the note taker, without the large print court orders, without cart. He can't follow along properly. He can't read everything. And his disability got worse over time from the beginning till when it was. So within the complaint itself, because of the fact that the plaintiff is not able to fully participate, meaning, yes, he's there. Yes, he's in court. But the standard here in this circuit is the accommodation has to overcome non-trivial temporal delays. He's he's having delays of time. He's having inconveniences when merely it could have just been simple for the court to provide it. And the most important part here is that in New York Family Court, there is no stenographer. They do a re-recording and then someone will take that re-recording and type it down. So here the plaintiff has to wait for months to get a transcript when you could have just had an ongoing cart. Wasn't he allowed to have a note taker with him? Wasn't he allowed to be accompanied by an individual who could provide some of those services for him? No, the note taker was denied to him on multiple occasions. The court did not allow it initially. Specifically, defendant D'Ambrosio had not permitted the note taker present. What was happening is in family court is the judge continuously stated to Mr. Fishman that your note taker will serve as a witness in the case. So you can't use them. Every note taker that he wanted to put forward was either a family member, according to the judge, or someone that would be relevant to the case, which is not true. Please go ahead, Judge Jacobs. May I ask one question? Does the OCA bar or fail to, does the OCA bar or restrict the discretion of the judge in providing any of these accommodations? Yes, under OCA's own rules, they have a dichotomy between administrative and judicial accommodations. Anything that OCA and the unified court system defines as administrative, which includes the specific auxiliary aids that Mr. Fishman was requesting, is only under the purview of the court administration to provide. The district executive, these are non-judicial employees, only they can provide it. So you're saying that the judge had no discretion to grant it? The judge had no discretion to deny it and or grant it. Upon a request of it, the judge is required to submit it to OCA for them to provide it. If the plaintiff had requested additional time or different kinds of things that would impair the judge's ability to control the courtroom, that's a judicial accommodation under the state's own rules, which OCA has no authority. But as far as the ones here, the judges had no authority to do it and doing so was wrongful. Thank you very much. Thank you. I think we have the argument. You've reserved a minute of rebuttal. We'll hear from counsel for Ms. D'Ambrosio. Mr. Lawrence. Good morning. I'm David Lawrence III. I'm an assistant Solicitor General. I'm appearing on behalf of Ms. D'Ambrosio, who is a principal court attorney. The district court correctly dismissed the Second Amendment complaint as against Ms. D'Ambrosio. In particular, Mr. Fishman's claims against Ms. D'Ambrosio are barred by absolute judicial immunity, where she allegedly denied him various accommodations in his individual case. And Mr. Fishman's complaint makes clear that all of those denials were done under the authority of the judge for whom Ms. D'Ambrosio worked, Family Court Judge Schauer. And in fact, the district court held Solicitor General Judge Schauer was entitled to judicial immunity for allegedly denying those accommodations, which is a ruling that Mr. Fishman does not challenge on appeal. And likewise, after briefing, the district court properly reached the same conclusion regarding Ms. D'Ambrosio. Indeed, in Richter v. Connecticut Judicial Branch, this court held that a claim, as here, for failure to provide accommodations for the appellant's alleged disability was barred by judicial immunity. Judicial immunity bars not only Mr. Fishman's damages claims against Ms. D'Ambrosio, but also his claim for declaratory relief, because those claims are retrospective in nature. Since Ms. D'Ambrosio is no longer involved in Mr. Fishman's Family Court matter. I understand, I understand Mr. Dimirak's argument to be that with respect to certain of the requested accommodations, those under the OCA system are treated as ministerial matters. And although her authority to act on them derived from her position with Judge Schauer, because of their nature as ministerial matters or administrative matters, that they should have been acted on and she should bear responsibility for them and the immunity doesn't reach that far. What's your response to that argument, if I've understood it correctly? Okay, well I have two main responses to that. The first is that the OCA website does not purport to decide what is administrative versus judicial for purposes of judicial immunity, or for the context of a, what is proper for a court attorney to do under the authority of the judge when the judge seeks to control the manner in which courtroom proceedings are conducted. Furthermore, the claim that Ms. Fishman denied the note-taker is allied by a couple of things. One is Mr. Fishman's own complaint, which says that they, that you and Judge Schauer jointly denied the note-taker. Furthermore, in reality, it was Judge Schauer who denied the note-taker by an order dated January 25th, 2017. Counsel, if I may, what do you say in response to your adversary's argument that the OCA, not the judge, decides the availability of these accommodations? The OCA did not decide the accommodations in this case. Instead, the plaintiff alleges that Judge Schauer and Ms. D'Ambrosio decided it. But let's put this case aside for a moment. Does a judge have power and discretion without consulting the OCA to grant accommodations? I believe that the judge has the discretion to control what goes on in the courtroom and that these accommodations fall within that. In any event, Ms. D'Ambrosio Suppose there's an expense associated with it. There's certainly an expense associated with CART. I mean, there are people who need to have sign language interpreters. People need to have interpreters from Spanish or Chinese. Who pays for that? And does a judge have discretion to grant it without consulting the OCA? I don't know whether the judge has discretion to grant things that will cost the OCA significant sums of money. But in any event, this court's judicial immunity law is clear that it's not the identity of the actor, but rather the nature of the actor determines whether something is judicial or administrative for purposes of judicial immunity. I guess, but the corollary is, I mean, would the judge be able to deny something that the OCA had granted? So if the OCA said, yeah, you get that and we'll throw in a dog too. But the judge says not happening. I'm not allowing that. I don't think he requires it. And it's going to be disruptive. Who wins when there's that kind of dispute? I believe the judge has the power to control the mode of proceedings in their courtroom. And in this case, the judge's determinations that Mr. Fishman had not established that he was disabled and that he was not entitled to the accommodations that he sought was upheld by the State Appellate Division, which found that the judge had acted properly. And here you, Ms. D'Ambrosio is one step removed from that. She is the court attorney acting under the authority of the judge. She had no independent authority to act in this case. Well, I mean, the complaint itself, as you point out, says that the judge had all the authority in this case. Yes, Your Honor. The district court also correctly held that it was required, I only have a short time, but the district court correctly held that it was required to abstain from hearing this action under Younger v. Harris, where all the requirements for Younger abstention are met here as I lay out in my brief. There wasn't as a pending state court proceeding. It implicated an important state interest in deciding child custody matters and the state proceeding afford the federal plaintiff an adequate opportunity to raise this federal statutory claims. Here is a claim of failure to provide accommodations for alleged disabilities. This court need not go no further as to Ms. D'Ambrosio than to hold that there is judicial immunity and that the injunctive relief claim is barred as Mr. Demiriak has conceded because Ms. D'Ambrosio is no longer involved in the Plaintiff's Family Court proceeding. So, therefore, given that I don't want to impose on the court, my arguments as to the 11th Amendment are plainly set out in my brief, and I ask in conclusion that this court affirm the judgment of dismissal in favor of Ms. D'Ambrosio. Thank you very much. Thank you. We'll hear next from Ms. Evans on behalf of the state's Office of Court Administration. Good morning. Good morning. May it please the court. My name is Lisa Evans, and I represent the New York State Office of Court Administration, Nancy Barry and Dan Weitz, and I will collectively refer to them as the OCA appellees this morning. The district court correctly held that Ms. Fishman's ADA claims against the OCA appellees who were sued in their official capacity were entitled to immunity from suit for money damages under the 11th Amendment immunity. This court in Garcia held that Title II of the ADA does not abrogate the 11th Amendment immunity unless the conduct complained of was motivated by discriminatory cannabis. The complaint in this action lacks any allegations that OCA, Ms. Barry, or Mr. Weitz acted with discriminatory animals because of Mr. Fishman's purported disabilities and is equally devoid of any facts that could support such a finding. Ms. Barry and Mr. Weitz are simply alleged to have discriminated against Mr. Fishman by not allowing him to use the cart technology used for the hearing impaired and for not overturning the decisions made by the judge to grant or deny him requested accommodations when he appeared before her. The facts in the complaint clearly establishes that Ms. Barry and Mr. Weitz considered Mr. Fishman's request for cart technology as a disability accommodation, invited him to further submit information that might support his request, offered alternative methods that could be used to address his acceptance. But let me let me interrupt for a minute, Ms. Evans. I understood from the complaint that OCA's position was that only a hearing impairment could justify the cost and, you know, providing a cart technology and that they invited Mr. Fishman to offer, you know, doctor's notes validating that he had such an impairment and he did not do so. But he says also, I mean, in addition to saying that he had some kind of hearing impairment, he says that he had a cognitive impairment that made cart important for him to be able to participate meaningfully in the proceedings. Why wouldn't the court consider such a basis for providing cart? Judge Carney, Mr. Fishman's initial request for cart was motivated out of him having for his memory, which he claimed was affected by his cognitive impairment. So he alleged that he could not remember orders from the court that were given to him from the court and that the cart reporting system would assist him in in doing so. However, what Mr. I believe Mr. Fishman was not aware of that the only transcription that is made during any proceeding using the cart system is a transcription that is made for the by people who for the person who was hearing impaired as they're speaking. Their information is not being transcribed and that does not result in a permanent transcript. So he while he he alleged a cognitive disability. It was a position of OCA that he the reason he wanted cart so that he could get transcripts was not the purpose for which the cart system was meant. It was meant for the hearing impaired. Could you also address the argument in your brief that he has not pled any viable claim under the ADA or rehab act, even apart from whether there was a rate waiver of 11th Amendment immunity. Well, if even if we if we were even to assume that Mr. Fishman is disabled, and even if we were to assume that he met the second prong, he cannot establish that he was denied the opportunity to participate in or benefit from OCA's programs, services or things that activities that were otherwise available to him. He was permitted to have a note taker. He was permitted to he was permitted to he was also told that he could ask the court to pause and allow him to to if he didn't understand something to write it down. He was allowed to have a disability advocate before him. He was allowed to wear sunglasses in court. He was he was so he was allowed to participate in these activities and the activities and the services that were available from us through OCA. And so he he does not meet the prong of the third prong where he was not given anything or allowed to participate. And he had access and he meaningfully participated in the court proceedings. So the but he says that his capacity to participate was meaningfully impeded because of the court's denial of reasonable accommodations that although yes, he was there and could speak that he needed a note taker and and the cost also should have been borne by the court system, he says. So is there any way to look at the record and look at his pleadings and tell whether meaningful participation that kind of standard was met? Yes, Your Honor. If you look at the the various the appearances, the appeals that he has taken, the he has always been allowed to have an attorney present. He has had a disability advocate who could assist him in advocating for his position. And he again was allowed to have a note taker. So he meaningfully participated. And as Your Honor mentioned earlier, he participated meaningfully from 2012 until 2016 and 17, when he then began to ask for different sorts of accommodations. He has had numerous actions, numerous appearances before the family court. He has been before the appellate division numerous occasions. And in each turn, he has had an opportunity to and has forcefully argued his position. So he has had meaningful participation. Counsel, let me ask you this. You listed a number of accommodations that were afforded to him during the proceedings. Were those signed off on or provided by OCA or by the judge or both? Say sunglasses. I can't imagine the OCA is providing sunglasses. Correct, Your Honor. The accommodations were provided to him by the by the judge. The request was made to the judge and and the judge made a decision. OCA would not have participated in making those decisions. It is within the sole discretion of the judge on how to run her courtroom and what what can or cannot be an impediment to any proceeding that that is in the courtroom itself. I have a second question. Have we ever ruled on whether individuals such as Miss Barry and Mr. White can be sued in their individual capacity in their individual capacity? Yes. I'm not sure. I'm not sure we've ever said that one way or the other. I was hoping you might know. I'm not aware of a case offhand where you've ruled that, but they certainly cannot be sued in their official capacity. Oh, that I know. Thank you. Thank you very much. I believe we have the argument. So thank you kindly. We'll hear from Mr. DeMariac has a minute of rebuttal. Mr. DeMariac, you're on mute. My apologies. The attorneys for Michelle DeAmbrosio have were unable to answer the question and in fact admitted that under the functional approach enunciated by the Second Circuit and Bliven versus Hunt, the administrative and ministerial actions taken by Michelle DeAmbrosio prevent her from having absolute immunity. And there is a question of fact as whether or not it was administrative or judicial in nature. And as far as going to the whether the complaint states a plausible claim for discrimination. I think, again, here, the reasonableness of the accommodations is a fact issue that could not be determined on this motion to dismiss. The no ticket was not provided. What is there to show? What is there to show in the allegations or in the record, which is the expanded record based on the state court, multiple rulings and so on? What is there to show that he was unable actually to meaningfully participate? He's litigated extensively for years now. Sure. He's litigated extensively unsuccessfully each and every time. And obviously, winning and losing doesn't mean it's meaningful. But if he had these accommodations, it would be different. For example, in the criminal proceeding, this is not part of this, but he was given an order of protection that was never handed to him in written form. It was orally read to him. So the fact that he allegedly violated an oral order of protection based on his inability to follow it makes it very difficult for you to say that he had meaningful access to the courts. And again, it's not with that order that has resulted in a criminal prosecution. Was that not in writing someplace in the court's docket? It was never provided to Mr. Fishman in writing in the court's docket in the court's docket. I believe so. But the court clerk had admitted during that trial that although he wrote in the record that he handed it to Mr. Fishman in writing that he never did. So this is just another example of how when you don't. Excuse me. Excuse me. Was it unavailable to him if it wasn't handed to him in person? He was aware, surely, that an order had been entered. Yeah, it was unavailable to him because he was immediately incarcerated at that time with the issuance of that order of protection initially. So he never had a chance to get a copy of it at that point. Isn't that an issue? Isn't that an issue that would implicitly have been decided in the criminal proceeding? I mean, he could not be convicted of violating an order of protection. If if if if he was never provided with it in a way that he could understand it. So that issue was decided. It was implicitly decided. However, in that case, there was ongoing proceedings about whether the prosecution's failure to provide proof that they'd never provided that was a sculptor evidence violation. But I don't want to get too sidetracked with that. I think here is entitled to having a day in court where he's not denied meaningful access. The district courts now entitled to was completely wrong. There is no need for discriminatory animus. The Supreme Court of Tennessee versus Lane made very clear that anything in courts is there's no immunity. Thank you. I think I think we have I think we have the arguments. Unless Judge Jacobs says something further. No, no. All right. Thank you very much, Mr. Marriott. We'll reserve decision. Thank you. Thank you. Thank you all. Thank you.